ESTATE OF Michael K. MARTIN by Kathryn Ann MARTIN, Administratrix, Kathryn Ann Martin, an Individual, Kyle Michael Martin and Clinton McCallum Martin b/n/f Kathryn Ann Martin, Appellants–Plaintiffs,

v.

CONSOLIDATED RAIL CORPORATION, Appellee–Defendant.

No. 27A04–9510–CV–380.

Court of Appeals of Indiana.

July 3, 1996.

Steven C. Smith, Patrick R. Ragains, and Jane G. Cotton, Anderson, for appellants.

Ronald J. Waicukauski and A. Kristine Lindley, White & Raub, Indianapolis, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff-Appellant Estate of Michael K. Martin (Martin) appeals the trial court's order granting summary judgment in favor of the Defendant–Appellee Consolidated Rail Corporation (Conrail).

We reverse.

### ISSUE

The parties raise a single issue, which we restate as:

Whether the law of the case doctrine precludes trial court consideration of a second summary judgment motion by a party when the second motion is based on new evidence relevant to a United States Supreme Court standard established after the trial court grant of the first motion.

We address a second issue *sua sponte,* which is:

Whether a state law negligence action against a railroad is preempted by federal railroad crossing warning regulations when a crossing improvement has been authorized but not completed.

### FACTS

This wrongful death action arises from an accident in April 1987 in which a car driven by Michael Martin was struck by a Conrail train. Martin sued Conrail in April of 1989 alleging that Michael's death was caused by the unspecified negligence of Conrail. Both approaches to the crossing where the accident happened were marked by a crossbuck sign and a stop bar on the pavement. Farther back from the crossing, there was a white "X" painted on the street and an advance warning sign (a yellow disk marked RxR). In 1985, the Indiana Department of Transportation (IDOT) recommended the installation of active warning signals at the crossing. Conrail was notified of the recommendation and was asked to provide cost estimates for the project. It did so in October of 1985. However, at the time of the accident, no active warning devices had been installed at the crossing.

In April 1991, Conrail filed a motion for summary judgment, asserting that the Federal Railroad Safety Act (FRSA) preempted a negligence action under state law. The trial court granted summary judgment, but we reversed on the preemption issue in *Estate of Martin v. Consolidated Rail Corp.,* 620 N.E.2d 720 (Ind.Ct.App.1993) *reh'g denied, trans. denied.* Conrail filed a second motion for summary judgment on April 3, 1995, designating additional evidence regard-ing the preemption issue, and the trial court granted the second motion on June 28, 1995. Martin appeals, arguing that the "law of the case" doctrine bars the trial court from granting the second summary judgment because our prior decision in *Martin* decided the preemption issue against Conrail.

### DISCUSSION

#### I.

#### Law of the Case Doctrine

Under the "law of the case" doctrine, an appellate court determination of a legal issue is binding on the trial court and on the Court of Appeals in any subsequent appeal in the same case and involving substantially the same facts. *Cha v. Warnick,* 476 N.E.2d 109, 114 (Ind.1985) *reh'g denied, cert. denied* 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257 (1985). However, when new facts are elicited on remand which materially affect the questions at issue, the trial court may apply the law to the new facts. *Fair Share Organization, Inc. v. Mitnick,* 245 Ind. 324, 327, 198 N.E.2d 765, 766 (1964), *cert. denied* 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48 (1964). A trial court may, upon remand after reversal of an order of summary judgment, recognize such additional facts as are dispositive of the case and rule accordingly. *Herrell v. Casey,* 609 N.E.2d 1145, 1147 (Ind.Ct.App.1993). When the additional facts distinguish the case factually from the case decided in the first appeal, the law of the case doctrine has no application. *Id.*

In *Estate of Martin,* we summarized the facts supporting Conrail's first motion for summary judgment:

In 1985, the Indiana Department of Transportation (DOT) inspected the crossing and recommended the installation of active warning signals. Conrail was notified of the recommendation in May, 1985, and was asked to furnish the DOT with cost estimates for the project. Conrail provided the written estimates in October, 1985. However, because of delays at the state and local level in finalizing the project, it

had not yet been funded in April, 1987, when the accident occurred.

620 N.E.2d at 721–722.

In reversing the summary judgment on the preemption issue, we relied upon *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). *Easterwood* was decided while the *Martin* appeal was pending, but after it had been fully briefed.

The *Easterwood* court determined that state tort law negligence actions regarding traffic control devices at railroad crossings are preempted if a project to improve the crossing is governed by certain federal regulations promulgated under the FRSA. Specifically, 23 CFR § 646.214(b)(3) and (4), "effectively set the terms under which railroads are to participate in the improvements of crossings," *id.* at 670, 113 S.Ct. at 1741. Those regulations

> displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained.... In short, for projects in which federal funds participate in the installation of warning devices, the Secretary [of Transportation] has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which respondent relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings.

*Id.* at 670–671, 113 S.Ct. at 1741.

In *Estate of Martin*, we found there was no preemption because plans to install active signals at the crossing had not been approved at the time of the accident due to delays at the state and local level in finalizing the project. 620 N.E.2d at 723. Thus, there was no "project" within the contemplation of 23 CFR § 646.214(b). *Id.*

For the second summary judgment motion, the factual record was substantially expanded, and the additional facts demonstrate that plans to install active signals at the crossing had been approved; the trial court could have seen that approval as satisfying the *Easterwood* standard as we characterized it in *Estate of Martin*[1]. The new evidence, consisting of the affidavit of Larry Shaw, Manager of the Railroad Unit of IDOT, and a number of attached exhibits, addresses the factual issues raised by *Easterwood* which were not addressed in the first, pre-*Easterwood* summary judgment motion. The new evidence demonstrates that, at the time of the accident, federal funding had been committed for the project and the Secretary of Transportation had approved the crossing improvement project in a number of ways. Thus, it "distinguish[ed] the case factually from the case decided in the first appeal," *Herrell*, 609 N.E.2d at 1147, and the law of the case doctrine did not prevent the trial court from considering the second summary judgment motion.

## II.

### Preemption of State Tort Law

■ While the trial court could properly consider the second summary judgment motion, we must reverse because recent decisions interpreting *Easterwood* convince us that mere approval and funding of railroad crossing improvement projects do not, standing alone, give rise to preemption of state law tort claims.

■ In reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. So, we must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Ayres v. Indian*

---

1. Our language in *Estate of Martin* suggested that federal "approval" might determine whether a state tort law action is preempted. But as explained below, decisions subsequent to *Estate of Martin* demonstrate that even if a project is "approved," there is no preemption until the warning devices are installed and fully operational.

*Heights Volunteer Fire Dept., Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986).

Under our characterization of the *Easterwood* standard in *Estate of Martin,* the new evidence Conrail presented with its second summary judgment motion demonstrated that the plans to install active signals at the crossing in question had been approved, therefore there could have been a "project within the contemplation of 23 CFR § 646.214(b)(3) & (4) ..." 620 N.E.2d at 723. But since *Estate of Martin,* a number of state and federal courts, including the Seventh Circuit Court of Appeals, have interpreted *Easterwood* to limit preemption to situations where an accident occurs *after* the warning devices are operational. The Seventh Circuit explicitly so held, noting that *Easterwood* did not address whether state law tort claims were preempted where, as here, an accident occurred after federal participation and approval but before installation of federally prescribed warning devices:

> We now hold that when § 646.214(b)(3) or (4) applies to a crossing upgrade, there is no preemption of state law adequacy of warning claims until the warning devices are installed and fully operational. We are not alone in this conclusion: almost every other court that has considered the issue has come to the same conclusion.

*Thiele v. Norfolk & Western Ry. Co.,* 68 F.3d 179, 183 (7th Cir.1995). The court noted that any other interpretation would leave the public unprotected by either state or federal law for the period between federal approval and actual warning device operation, and would create gaps where no entity was responsible for railroad crossing safety. *Id.* at 184. In those cases where a project was approved, but for some reason never completed, the public would be unprotected indefinitely. *Id.* We are persuaded by the *Thiele* reasoning and hold that Martin's tort claim was not preempted by federal regulations because the railroad crossing warning devices which had been approved at the time of the accident were not yet installed and operational.

## CONCLUSION

Because Martin's tort action was not preempted by federal funding and approval of active warning devices at the crossing where the accident took place, summary judgment in favor of Conrail is reversed and the cause remanded for further proceedings consistent with this opinion.

CHEZEM and HOFFMAN, JJ., concur.