**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant–Defendant,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, Appellee–Co-defendant,**

**and**

**Mark Bloom, Co-defendant,**

**and**

**Patricia A. Brown and Daniel V. Brown, Plaintiffs.**

No. 49A02–0306–CV–489.

Court of Appeals of Indiana.

Jan. 6, 2004.

W. Brent Threlkeld, Threlkeld & Reynolds, LLP, Indianapolis, IN, Attorney for Appellant.

Donald G. Orzeske, Jennifer L. Blackwell, Goodin, Orzeske & Blackwell, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

American Family Mutual Insurance Company ("American Family") brings this interlocutory appeal from the trial court's entry of summary judgment in favor of Federated Mutual Insurance Company ("Federated") in. a dispute as to which insurer is obligated to provide uninsured motorist coverage for plaintiffs, Daniel V. Brown and Patricia A. Brown.

We reverse and remand with instructions.

### ISSUE

Whether this court's previous decision in this matter requiring Federated to "provide uninsured motorist coverage to the Browns" foreclosed Federated's subsequent request for summary judgment based upon additional evidence.

### FACTS

The underlying facts and procedural history were set out in our previous decision in *American Family Mut. v. Federated Mut. Ins.*, 775 N.E.2d 1198, 1200 (Ind.Ct. App.2002) (referred to herein as *American Family I*):

> On January 2, 1999, at approximately 1:07 p.m., Daniel was operating a 1998 Ford van southbound on Shelby Street in Indianapolis, Indiana. Patricia was a passenger in the van. At that time, a 1982 Ford F150 truck registered to Mark Bloom ("Bloom"), was parked unattended while idling. in a gas station parking lot near 1600 Shelby Street. As the Browns proceeded southbound on Shelby Street, the unattended Ford F150 slipped into gear, rolled out of the gas station parking lot into traffic and collided with the van driven by the Browns. Bloom was uninsured at the time of this collision.

> The van occupied by the Browns belonged to Daniel's employer, Allied Equipment Service Corporation ("Allied"), and was insured under a commercial insurance policy issued by Federated. After learning about the status of Bloom's insurance coverage, the Browns filed a claim with Federated in order to recover for injuries sustained in the collision. Federated is an insurance company authorized to write policies in Indiana. On the day of the accident, Federated covered Allied with a policy of insurance. At the same time, American Family provided uninsured motorist coverage to the Browns under their personal automobile insurance policy.

> On January 5, 2001, Chuck Standiford (Standiford), a Federated claims supervisor, sent a letter to the Browns' counsel denying their claim based on the policy language that limited uninsured and underinsured motorist coverage to "directors, officers, partners, and owners of the named insured" and "his or her family members." (Appellant App. pp. 39, 84).

> \* \* \* \* \*

> Consequently, on December 27, 2000, the Browns filed a Complaint for Damages with Jury Demand alleging tortious conduct by Bloom. The Complaint also brought claims for uninsured motorist benefits against Federated and American Family. On February 8, 2001, Bloom filed his Answer. American Family filed its Answer to the Browns' Complaint for Damages, Affirmative Defenses and Request for Jury Trial on

February 23, 2001. On April 9, 2001, Federated filed its Answer to the Browns' Complaint for Damages with Jury Demand.

On May 14, 2001, Federated filed its Verified Brief in Support of Motion for Summary Judgment and for Costs, Including Attorney's Fees. Federated argued that the Browns' claim should be dismissed because Federated's uninsured motorist coverage was limited to "directors, officers, partners, and owners of the named insured" and "his or her family members." (Appellant's App. pp. 12–13).

On June 8, 2001, American Family filed its Cross Motion for Summary Judgment and Brief Opposing Federated Mutual Insurance Company's Motion for Summary Judgment. In this motion, American Family argued that the Browns were primarily covered under the Federated insurance policy, rendering American Family's uninsured motorist coverage secondary to Federated's uninsured motorist coverage. American Family also claimed that Federated's position that uninsured motorist coverage applied only to directors, officers, partners, and owners of the named insured and his or her family members violated Ind.Code § 27–7–5–2.

Federated filed its Response to American Family's Cross Motion for Summary Judgment on August 21, 2001. Federated claimed that Patricia failed to qualify as an insured for liability purposes and, therefore, she was not entitled to uninsured motorist coverage under the insurance policy issued by Federated to Allied. On September 17, 2001, American Family filed its reply brief. On December 17, 2001, a hearing was held on all of the motions for summary judgment. On February 6, 2002, the trial court issued its Order on Federated Mutual Insurance Company's Motion for Summary Judgment and for Costs, Including Attorney Fees. The Order stated, in pertinent part, as follows:

> This cause comes before the Court on the Verified Motion of [Federated] for Summary Judgment and for Cost, Including Attorney's Fees, pursuant to Indiana Rules of Procedure, Trial Rule 56. The Court having found that there is no genuine issue of fact to be submitted to a jury, now concludes that Defendant Federated is entitled to judgment as a matter of law.
>
> IT IS HEREBY ORDERED that the Motion of Defendant Federated for Summary Judgment is granted. There being no just reason for delay, final judgment shall be, and is hereby entered in favor of the Defendant Federated, dismissing this action with prejudice as against this Defendant only.

*Id.*

American Family appealed that order which resulted in the above-cited decision. In *American Family I*, we discussed, *inter alia*, the statutory scheme with regard to uninsured motorist coverage and public policy concerns implicated in such provisions that attempt to treat classes of insureds differently. *Id.* at 1204–07. As to the statute requiring uninsured motorist coverage unless rejected in writing, we stated:

> I.C. § 27–7–5–2 is a mandatory coverage, full-recovery, remedial statute. It requires insurers operating within Indiana to set minimum standards that the legislature deemed acceptable. This court will not approve any clause, exception or exclusion that attempts to subvert or narrow the intent of the legislature. Any language in an insurance

policy that dilutes statutory protections is contrary to public policy.

\* \* \* \* \*

Where a contract actually contravenes a statute, the court's responsibility is to declare the contract void.

\* \* \* \* \*

[W]e find that Federated cannot rewrite its policy to exclude uninsured motorist coverage and subvert the protections of I.C. § 27–7–5–2. Thus, Federated's attempt to exclude the Browns from uninsured motorist coverage because they are not directors, officers, partners, and owners of the named insured is *void* under Indiana law and cannot be condoned by this court.

\* \* \* \* \*

Moreover, we hold that Patricia must be provided uninsured motorist coverage in an amount that meets or exceeds the limits of liability specified in the bodily injury liability provision of Federated's policy because *Federated failed to produce evidence that Allied expressly waived this statutory requirement in writing.* Failure to obtain written rejection of uninsured motorist coverage will require an insurer to provide uninsured motorist coverage equal to bodily injury liability limits. *Here, there is no written rejection of full-liability limits of uninsured motorist coverage by Allied.*

*Id.* at 1206–07 (citations omitted) (emphasis added).

We concluded:

[W]e reverse the trial court's grant of summary judgment in favor of Federated. As an "insured" under Allied's policy, Patricia is entitled to coverage under the uninsured motorist coverage endorsement. Therefore, we hold that Federated must honor its policy of in-

surance and provide uninsured motorist coverage to the Browns.

Reversed and remanded for proceedings not inconsistent with this opinion.

*Id.* at 1207. Federated did not file for rehearing or petition for transfer, and the opinion was certified on November 14, 2002.

When the matter resumed in the trial court, Federated filed an amended exhibit list that contained only a document entitled "Indiana Commercial Auto Coverage Option Form—Executed Waiver of Coverage," (hereinafter "1997 Waiver"). (Appellants' App. 151). A checked box on the document indicated that Allied had rejected uninsured and underinsured motorist coverage for the "group of persons" defined as "any other person who qualifies as an insured." (Appellant's App. 151). The document was signed and dated February 20, 1997. The document had not been included in the list of designated evidentiary material upon which Federated relied for summary judgment in the first appeal. However, American Family had raised the lack of a written waiver as an issue in its cross-motion for summary judgment before the first appeal. (Appellant's App. 105–07).

American Family moved to strike Federated's amended exhibit list wherein, *inter alia*, it urged that the decision in the previous appeal constituted the law of case, and as such, Federated was foreclosed from attempting to relitigate its responsibility for uninsured motorist coverage to the Browns.

On October 31, 2002, relying upon the designated material from the first appeal *and* the document dated February 20, 1997 that reflected the rejected uninsured motorist coverage, Federated filed its "Second Motion for Summary Judgment." (Appellant's App. 171).

On November 27, 2002, American Family filed its "Motion for Entry of Judgment," requesting that the trial court enter judgment in its favor with regard to the uninsured motorist coverage in accordance with our decision in *American Family I.* (Appellant's App. 184). Thereafter, the parties filed additional motions, including American Family's cross-motion for summary judgment.

On May 5, 2003, the trial court entered the following order:

> The Court having conducted a hearing on April 17, 2003, and having considered the oral argument of counsel and having reviewed the pleadings herein, now FINDS and ORDERS:
>
> 1. That [American Family's] motion to strike the Indiana Commercial Auto Coverage Option Form—Executed Waiver of Coverage is denied.
> 2. That [American Family's] Motion to Strike Second Motion for Summary Judgment is denied.
> 3. That [Federated's] Second Motion for Summary Judgment is granted.
> 4. That [American Family's] Motion for Entry of Judgment based on the Court of Appeals holding is denied.

(Appellant's App. 231).

### DECISION [1]

■ American Family urges that the trial court erred by granting a second summary judgment to Federated on the issue of whether Federated was required to provide uninsured motorist coverage to the Browns after this court's decision, from which neither rehearing nor transfer were requested, because our decision ordered Federated to "provide uninsured motorist coverage to the Browns." *See*

American Family I 775 N.E.2d at 1207. We agree.

This case turns on finality. The parties have engaged in lengthy discussions about the law of the case doctrine. The doctrine has been described as follows:

> In general, facts established at one stage of a proceeding, which were part of an issue on which judgment was entered and appeal taken, are unalterably and finally established as part of the law of the case and may not be relitigated at a subsequent stage. Even if the judgment is erroneous, it nevertheless becomes the law of the case and thereafter binds the parties unless successfully challenged on appeal. All issues decided directly or by implication in a prior decision are binding in all further portions of the same case.

We note, however, that the law of the case doctrine is a discretionary rule of practice. This doctrine expresses the practice of courts generally to refuse to reopen what has been previously decided. A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances.

*Landowners v. City of Fort Wayne*, 622 N.E.2d 548, 549 (Ind.Ct.App.1993) (citations omitted).

In *State v. Kuespert*, 425 N.E.2d 229, 233 (Ind.Ct.App.1981), we invoked the law of the case doctrine and stated:

> While the purpose of the doctrine is not to foreclose legitimate appeals of issues not previously decided, it should be invoked in the interests of judicial economy and prompt dispensation of justice to

---

1. Both parties raise various procedural arguments suggesting that aspects of the other party's arguments should not be considered by this court. We decline to address the procedural matters inasmuch as those arguments do not affect our disposition.

preclude the promotion of potentially endless litigation and appeals. Thus, further consideration of the propriety of the court's proceeding under T.R. 37 to impose sanctions should be foreclosed by the law of the case as an issue actually raised on appeal and decided even though without the benefit of all the evidence which the state by due diligence could have brought to our attention but did not.

*Id.* (citation omitted); *see also Cunningham v. Hiles,* 439 N.E.2d 669, 676 (Ind.Ct. App.1982) (opinion on rehearing noting that even an erroneous judgment "nevertheless becomes the law of the case and thereafter binds the parties unless successfully challenged on appeal.").

Federated urges that the law of the case doctrine would not prevent it from presenting new or additional evidence on a second summary judgment after an appeal. *See e.g. Estate of Martin v. Consol. Rail Corp.,* 667 N.E.2d 219 (Ind.Ct.App.1996) (second summary judgment with presentation of new facts after remand on same issue); *Watters v. Dinn,* 666 N.E.2d 433 (Ind.Ct.App.1996) (Sullivan, J. dissenting) (summary judgment appropriate after appeal with remand of three issues that were not determined on appeal).

In the first appeal in *Estate of Martin,* we reversed the trial court's entry of summary judgment for the railroad that had been based upon preemption. *Estate of Martin II,* 667 N.E.2d at 221. We held that "summary judgment in favor of Conrail is reversed and the cause remanded for further proceedings consistent with this opinion." *Estate of Martin I,* 620 N.E.2d 720, 726 (Ind.Ct.App.1993). After remand, the railroad filed a second summary judgment motion and designated additional evidence in support thereof. *Estate of Martin II,* 667 N.E.2d at 220–21. The trial court again granted summary

judgment for the railroad. *Id.* In the second appeal, we rejected the Estate's law of the case argument that our decision in the first appeal decided the issue against the railroad and precluded the second summary judgment. *Id.* at 221–22. While we did not explicitly so hold in *Estate of Martin II,* the preemption issue had not been finally determined on the merits in *Estate of Martin I. See Estate of Martin I,* 620 N.E.2d at 726. Instead, our conclusion in *Estate of Martin I* merely reversed the award of summary judgment to the railroad on the preemption issue and did not implicitly or explicitly order judgment for the Estate. *Id.* Ultimately, in *Estate of Martin II,* we reversed the summary judgment in favor of the railroad on the merits. *Estate of Martin II,* 667 N.E.2d at 222.

In *Watters v. Dinn,* William and Vicki "filed an action against David alleging, among other things, invasion of privacy, intentional infliction of emotional distress and loss of consortium." 666 N.E.2d at 435. David filed counterclaims. The trial court granted summary judgment to "David on William and Vicki's claims and in favor of William and Vicki on David's counterclaims." *Id.* at 436. "On appeal, this court affirmed the trial court's grant of summary judgment on all claims except invasion of privacy, intentional infliction of emotional distress and loss of consortium." *Id.* The cause was remanded to the trial court for additional proceedings. After remand, David filed for summary judgment with a designation of evidence that had not been before the trial court in the earlier proceeding. *Id.* at 436–37. The trial court again granted summary judgment for David. *Id.* William and Vicki appealed with regard to their invasion of privacy claim arguing that the first appeal had determined that genuine issues of material fact existed making summary judgment inappropriate. *Id.* at 436. They argued

the law of the case doctrine to urge that the trial court could not enter the second summary judgment. *Id.* In the second appeal, we rejected the law of the case doctrine noting "that contrary to William and Vicki's assertions, this court did not reverse summary judgment on the claim of invasion of privacy because of the existence of genuine issues of material fact; rather, we reversed because we found that David had failed to file a motion for summary judgment on this issue and had failed to designate any evidence in support of such a motion." *Id.* Thus, David's motion for summary judgment with a designation of additional evidence was not precluded where we had not finally determined the issue on the merits, and, in fact, we had remanded the cause for further proceedings on the issue. *Id.* at 436–37.

Thus, in *Estate of Martin II,* and *Watters,* we refused to invoke the law of the case doctrine where additional or new evidence was presented after remand from this court where the evidence after remand was in accordance with our instructions or did not alter a matter that had already been finally determined. However, the facts here present an entirely different set of circumstances.

In *American Family I,* we specifically found that "Federated's policy attempting to exclude the Browns from uninsured motorist coverage because they are not directors, officers, partners, and owners of the named insured is void[,]" and that "Federated failed to produce evidence that Allied expressly waived this statutory requirement in writing." *American Family I,* 775 N.E.2d at 1206. We also stated:

> Failure to obtain written rejection of uninsured motorist coverage will require an insurer to provide uninsured motorist

coverage equal to bodily injury liability limits. Here, there is no written rejection of full-liability limits of uninsured motorist coverage by Allied.

*Id.* at 1206–07. Then, we unequivocally ordered Federated to provide uninsured motorist coverage to the Browns.

Our multifaceted approach—on statutory, public policy, contract, and evidentiary grounds—to the broad issue whether Federated was required to provide uninsured motorist coverage for the Browns, left no gap to be filled by the presentation of additional evidence on remand to the trial court. *American Family I,* 775 N.E.2d. at 1204–07. We invoked the statutory requirements for uninsured motorist coverage. *Id.* at 1205–06. We declared a portion of the contract void on public policy grounds. *Id.* at 1206. Then, because Federated had not presented a written rejection of coverage at any stage of the proceedings including the designation of evidence for summary judgment, we determined that no written rejection of uninsured motorist coverage existed. *Id.* at 1206–07. Even if one segment of the grounds for our determination was arguably wrongly decided due to Federated's failure to present all the evidence on the issue, that issue was nonetheless finally determined on the merits.

During the appeal, Federated did not avail itself of procedures for suspending an appeal and presenting new evidence to the trial court. *Cf. Southwood v. Carlson,* 704 N.E.2d 163, 165 (Ind.Ct.App.1999) (noting proper procedure to suspend appeals from summary judgments by employing T.R. 60 to allow consideration of new evidence by trial court as determined in *Logal v. Cruse,* 267 Ind. 83, 368 N.E.2d 235 (1977)).[2] Based upon the information

---

2. As noted by American Family, Federated does not contend that the 1997 Waiver was

"newly discovered" evidence, *i.e.,* evidence unavailable at the time of the first summary

presented to this court, we stated that no written rejection existed and that Federated was required to provide uninsured motorist coverage. Federated did not request rehearing. Federated did not petition for transfer. As such, the opinion was certified to the trial court. At that point, the underlying issue of whether a waiver of coverage existed was "decided directly." *See Landowners*, 622 N.E.2d at 549. Moreover, the paramount issue of whether Federated was required to provide uninsured motorist coverage to the Browns was "decided directly." *Id.* Our decision finally determined both issues on the merits, and those components of the cause were not remanded for further proceedings.

██ Further, our examination of the law of the case doctrine discloses that any discretion vested in one court to alter a prior decision of a different court is held by a "coordinate court." *Id.* The trial court is not a coordinate court to this court; thus, it has no power to alter an appellate decision. *See* BLACK'S LAW DICTIONARY 286, 336 (7th ed.1999) ("coordinate jurisdiction" same as "concurrent jurisdiction" which is defined as "[h]aving authority on the same matters"). As such, the trial court did not have discretion to undo our decision on the merits with regard to the requirement that Federated provide uninsured motorist coverage to the Browns.

Also, our decision is guided by longstanding considerations in appellate forums: the avoidance of piecemeal litigation, the concerns regarding expenditure of resources, and disallowing a "second bite at the apple." *See e.g., Erie Ins. Co. v. George*, 681 N.E.2d 183, 189–90 (Ind. 1997) (piecemeal litigation is to be avoided,

thus, insurer could not split subrogation claim from insured's damages claim because multiple legal theories in support of claim from one transaction must be litigated at one time); *Cinergy Corp. v. St. Paul Surplus Lines Ins. Co.*, 785 N.E.2d 586, 597 (Ind.Ct.App.2003) (affirming dismissal of one of two actions pending in different counties to avoid piecemeal litigation); *Kuespert*, 425 N.E.2d at 233 (judicial economy and prompt administration of justice are main purposes of law of the case doctrine). Although the discussion arose in a different manner, we expressed our concern in *Gallant Ins. Co. v. Wilkerson*, 720 N.E.2d 1223, 1229 (Ind.Ct.App.1999), regarding the waste of resources when the parties and courts expend the time to litigate matters to a disposition "only then to discover the insurer is claiming a second bite at the apple in the form of a policy defense." *Id.* (quoting *Western States Ins. Co. v. Weller*, 299 Ill.App.3d 317, 233 Ill. Dec. 692, 701 N.E.2d 542, 545 (1998)); *see also Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856, 859–60 (failure to raise dispositive defense until proceedings supplemental barred by estoppel). Here, Federated's attempt at a second bite at the apple should have been rejected. We do so now.

Again, we reverse and remand to the trial court with instructions that Federated must honor its policy and provide uninsured motorist coverage to the Browns, consistent with our earlier opinion.

RILEY, J., and BAILEY, J., concur.

---

judgment and appeal. Also, Federated has wholly failed to demonstrate any "extraordinary circumstances" component of the law of

the case doctrine. *See Landowners,* 622 N.E.2d at 549.