Mari MILLER, Appellant,

v.

Glenda OWENS, Anthony Chase, Fabian Calisto and Extendacare of Indiana, Inc., Appellees–Defendants,

and

Waterford Place, Third Party Defendant/Garnishee Defendant–Appellee.

No. 52A05–1012–CP–742.

Court of Appeals of Indiana.

July 13, 2011.

Transfer Denied Dec. 8, 2011.

Jeffry G. Price, Peru, IN, Attorney for Appellant.

Anne L. Cowgur, Christopher R. Taylor, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Appellant–Plaintiff Mari Miller ("Miller") challenges the Miami Circuit Court's order finding that Appellee–Third Party Defendant/Garnishee Defendant Waterford Place ("Waterford") was not in contempt of the court's garnishment order. On appeal, Miller presents three issues, which we restate as:

I. Whether the trial court erred by failing to apply the law-of-the-case doctrine;

II. Whether the trial court erred in concluding that Waterford's legal arguments were not precluded by offensive collateral estoppel; and

III. Whether the trial court erred in concluding that Waterford was withholding the correct amount of wages from its employee pursuant to Indiana Code section 24–4.5–5–105.

We affirm.

### Facts and Procedural History

In 2001, a jury found Appellee–Defendant Fabian Calisto ("Calisto") liable to Miller for compensatory and punitive damages totaling $900,000. In 2004, the trial court entered a garnishment order against Calisto and his then-employer, Care Centers, Inc. ("Care Centers"), directing Care Centers to garnish Calisto's wages pursuant to Indiana Code section 24–4.5–5–105 (2006) ("Section 105"). This garnishment order directed Care Centers to garnish twenty-five percent of Calisto's wages. Care Centers then started garnishing Calisto's wages according to its interpretation of Section 105. Miller, however, thought that Care Centers was not withholding enough and filed a petition seeking to hold Care Centers in contempt of the trial court's garnishment order. At the contempt hearing, the trial court agreed with Miller that Care Centers had not been withholding the proper amount from Calisto's wages. Specifically, the trial court concluded that the amount of Calisto's wages subject to garnishment could not be reduced by the child support withholding that was also taken from Calisto's wages. The trial court ordered Care Centers to withhold a total of forty-seven percent of Calisto's wages, consisting of twenty-five percent to satisfy the garnishment and twenty-two percent for the child support withholding. The trial court also determined that Care Centers was in indirect contempt of the garnishment order and ordered Care Centers to pay Miller $14,386.25 and pay $400 in attorney fees.

Care Centers attempted to appeal the trial court's order, but a panel of this court concluded that Care Centers should have brought its appeal from the original garnishment order, not the contempt finding, and that Care Centers' appeal was therefore untimely. *See Calisto v. Miller,* No. 52A04–0505–CV–265, 847 N.E.2d 1072 (Ind.Ct.App. May 12, 2006) (dismissing appeal as untimely).

Calisto began to work for Extendacare Health Network, Inc. ("Extendacare") in November 2008. Miller obtained an order from the trial court requiring this new employer to garnish Calisto's wages, adopting the reasoning of the 2005 contempt order. Thus, the trial court ordered Extendacare to withhold twenty-five percent of Calisto's wages to satisfy the garnishment order and concluded that "the amount paid in child support does not reduce the amount available from [Calisto's] earnings for garnishment in favor of [Mil-

ler]."[1] Appellant's App. p. 45.

In June 2010, Calisto began to work for Waterford. Miller sought and obtained a garnishment order from the trial court on August 6, 2010, which provided that Waterford was to garnish Calisto's wages pursuant to Section 105 "at least monthly 25% of the amount by which [Calisto's] disposable income exceeds thirty (30) times the federally established minimum wage[.]" *Id.* at 51. Waterford then began to garnish Calisto's wages, but under its own reading of Section 105, and in a manner similar to what Care Centers had done. As a result, Miller sent Waterford a letter stating that Waterford was not withholding the proper amount from Calisto's wages. Eventually, on September 7, 2010, Miller filed a petition alleging that Waterford was in indirect contempt of the trial court's garnishment order. The trial court ordered Waterford to appear for a hearing to show cause why it should not be held in contempt.

The trial court held a contempt hearing on October 1, 2010, at which Waterford submitted its argument and evidence regarding the manner in which it calculated the amount to withhold from Calisto's wages, claiming that it had acted in accordance with Section 105. Therefore, Waterford argued, it was not in contempt of the trial court's garnishment order. Evidence was presented that Calisto's weekly gross pay was $2,153.85, and that his federal and state withholdings were $713.16, leaving a weekly net pay of $1,440.69. Waterford also withheld $348 per week from Calisto's pay to satisfy a child support withholding order. Pursuant to Waterford's interpretation of Section 105, only twenty-five percent of Calisto's weekly net pay, or $360.17, was available for garnishment of a civil judgment like Miller's, and after reduction of that amount by Calisto's

child support withholding order in the amount of $348, Waterford withheld the difference of $12.17. At the conclusion of hearing, the trial court took the matter under advisement and requested that the parties submit briefs on the issue. On November 17, 2010, after receiving the parties' briefs, the trial court issued an order ruling that Waterford was correct in its calculations and not in contempt of the court's garnishment order, and therefore denied Miller's request for attorney fees. Miller now appeals.

## I. Law–of–the–Case Doctrine

 Miller first claims that the trial court had already considered and rejected Waterford's argument in its earlier rulings regarding Calisto's prior employers, Care Centers and Extendacare, and that therefore the trial court should not have reconsidered its previous rulings under the law-of-the-case doctrine.

 The law-of-the-case doctrine is a discretionary rule that expresses the practice of courts to refuse to reopen what has previously been decided. *Am. Family Mut. Ins. Co. v. Federated Mut. Ins. Co.,* 800 N.E.2d 1015, 1019 (Ind.Ct.App.2004).

> In general, facts established at one stage of a proceeding, which were part of an issue on which judgment was entered *and appeal taken,* are unalterably and finally established as part of the law of the case and may not be relitigated at a subsequent stage. Even if the judgment is erroneous, it nevertheless becomes the law of the case and thereafter binds the parties unless successfully challenged on appeal. All issues decided directly or by implication in a prior decision are binding in all further portions of the same case.

---

1. There is no indication that an appeal was taken from this order.

*Id.* (emphasis added). As explained in *Serletic v. Noel,* 700 N.E.2d 1159, 1161 (Ind.Ct.App.1998), under the law-of-the-case doctrine, a trial court is not bound by its own earlier rulings unless they have been adopted by an appellate court's decision. This rule prevents the unseemly possibility that a trial court might be unable to correct its own, earlier ruling that it later finds to be erroneous only because of the fact of its earlier ruling.

Here, although Care Centers attempted to appeal the trial court's earlier ruling, the appeal was dismissed as untimely, and the trial court's ruling was not adopted by an appellate court's decision. The law-of-the-case doctrine is therefore inapplicable. *See Mafnas v. Owen Cnty. Office of Family & Children,* 699 N.E.2d 1210, 1212 (Ind.Ct.App.1998) (holding that issues were not waived on subsequent appeal when initial appeal was dismissed); *White River Conservancy Dist. v. Commonwealth Eng'rs, Inc.,* 575 N.E.2d 1011, 1014 (Ind.Ct.App.1991) (allowing appellant to raise issues in second appeal where first appeal was dismissed for failure to meet jurisdictional requirements). Because the law-of-the-case doctrine is inapplicable, the trial court was not precluded from reconsidering the legal reasoning underpinning its earlier garnishment orders.

## II. Offensive Collateral Estoppel

█ █ Miller also claims that the trial court erred by not concluding that Waterford's arguments were precluded by offensive collateral estoppel. Miller tacitly admits that it never presented this claim to the trial court. A party cannot argue on appeal an issue that was not presented to the trial court, and when an issue is not presented before the trial court, appellate review of that issue is waived. *Dennerline v. Atterholt,* 886 N.E.2d 582, 594 (Ind.Ct.App.2008). Waiver notwithstanding, Miller would still not prevail.

█ "Collateral estoppel may bar the subsequent relitigation of a fact or issue that was necessarily adjudicated in a prior lawsuit." *Doe v. Tobias,* 715 N.E.2d 829, 831 (Ind.1999). If a plaintiff seeks to foreclose a defendant from litigating an issue that the defendant has previously litigated unsuccessfully in an action with another party, the collateral estoppel is termed "offensive." *Id.* The trial court has "broad discretion" in deciding whether to permit offensive collateral estoppel based on a prior civil proceeding. *Id.* To determine whether to permit the use of offensive collateral estoppel, the trial court must consider whether the party in the prior action had a full and fair opportunity to litigate the facts and whether it would be otherwise unfair to permit the use of collateral estoppel given the facts of the particular case. *Id.* at 832.

Under the facts and circumstances of the present case, we believe that the trial court correctly declined to apply offensive collateral estoppel to foreclose Waterford's defense in the present case because Waterford was not a defendant who had "previously litigated unsuccessfully in an action with another party." *Id.* at 831. In fact, Waterford was not a party at all when the trial court issued its earlier rulings. Thus, Waterford did not have a full and fair opportunity to litigate the issue. *See id.* at 832.

Miller claims that Waterford has no real interest in the present case because the wages at issue belong to Calisto, not Waterford. Miller therefore claims that the effect of Waterford's current challenge is to give Calisto yet another chance to challenge the trial court's rulings that were not in his favor. While we are not unsympathetic to Miller's dismay, we cannot overlook the fact that the earlier rulings applied to Calisto's prior employers, not to Waterford. And when Miller did not agree with

Waterford's interpretation of the garnishment statute, it was Miller who sought to have Waterford held in contempt of the trial court's garnishment order. This clearly gives Waterford an interest in defending its interpretation of the garnishment order.

### III. Interpretation of Section 105

■■■ Lastly, the parties argue over the proper interpretation of the garnishment statute, Section 105. The interpretation of statutes is a question of law that we review *de novo*. *Cotton v. Ellsworth*, 788 N.E.2d 867, 869 (Ind.Ct.App.2003). The first step in interpreting a statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *Kinslow v. GEICO Ins. Co.*, 858 N.E.2d 109, 114 (Ind.Ct.App.2006). If the statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* The statute at issue here provides in relevant part:

(1) For the purposes of IC 24–4.5–5–101 through IC 24–4.5–5–108: [2]

 (a) "disposable earnings" means that part of the earnings of an individual, including wages, commissions, income, rents, or profits remaining after the deduction from those earnings of amounts required by law to be withheld;

 (b) "garnishment" means any legal or equitable proceedings through which the earnings of an individual are required to be withheld by a garnishee, by the individual debtor,

or by any other person for the payment of a judgment; and

 (c) "support withholding" means that part of the earnings that are withheld from an individual for child support in accordance with the laws of this state.

(2) *Except as provided in subsection (8),* the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment to enforce the payment of one (1) or more judgments against him may not exceed:

 (a) twenty-five percent (25%) of his disposable earnings for that week; or

 (b) the amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage prescribed by 29 U.S.C. 206(a)(1) in effect at the time the earnings are payable;

whichever is less. In the case of earnings for a pay period other than a week, the earnings shall be computed upon a multiple of the federal minimum hourly wage equivalent to thirty (30) times the federal minimum hourly wage as prescribed in this section.

(3) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to *garnishment or support withholding to enforce any order for the support of any person* shall not exceed:

 (a) where such individual is supporting his spouse or dependent child (other than a spouse or child with

---

**2.** Although this section is part of the Uniform Commercial Credit Code ("UCCC"), neither party disputes that Section 105 is applicable to the debt owed by Calisto. *See Mims v. Commercial Credit Corp.*, 261 Ind. 591, 593, 307 N.E.2d 867, 868 (1974) (noting that "UCCC ... allows *all* debtor-defendants a

basic exemption by setting a garnishment ceiling.") (emphasis added); *see also* 1980 Ind. Op. Att'y Gen. No. 29, 1980 WL 26195 (concluding that Section 105 is not limited exclusively to consumer debt but extends to all debtor-defendants a basic exemption by setting a garnishment ceiling).

respect to whose support such order is used), fifty percent (50%) of such individual's disposable earnings for that week; and

(b) where such individual is not supporting such a spouse or dependent child described in subdivision (a), sixty percent (60%) of such individual's disposable earnings for that week;

except that, with respect to the disposable earnings of any individual for any workweek, the fifty percent (50%) specified in subdivision (a) shall be deemed to be fifty-five percent (55%) and the sixty percent (60%) specified in subdivision (b) shall be deemed to be sixty-five percent (65%), if and to the extent that such earnings are subject to garnishment or support withholding to enforce a support order with respect to a period which is prior to the twelve (12) week period which ends with the beginning of such workweek.

(4) No court may make, execute, or enforce an order or process in violation of this section.

　　　＊　　　＊　　　＊ [3]

(8) A support withholding order takes priority over a garnishment order irrespective of their dates of entry or activation. *If a person is subject to a support withholding order and a garnishment order, the garnishment order shall be honored only to the extent that disposable earnings withheld under the support withholding order do not exceed the maximum amount subject to garnishment as computed under subsection (2).*

I.C. § 24–4.5–5–105 (emphasis added).

Section 105's first subsection, 24–4.5–5–105(1), defines the operative terms of "dis-posable earnings," "garnishment," and "support withholding." "Disposable earnings" is defined as the earnings of an individual remaining after the deduction from those earnings of those amounts required by law, such as state and federal taxes. Here, it appears to be undisputed that Calisto's weekly disposable earnings are $1,440.69. The term "garnishment" is then defined to include legal proceedings through which withholdings are taken from a person's earnings for the payment of a judgment. Again, it appears undisputed that Miller has a valid garnishment against Calisto's wages. Section 105 then defines the term "support withholding" as that part of a person's earnings that are withheld for child support in accordance with the laws of this state. Thus, "support withholding" means a "child support withholding." Here, Calisto had a child support withholding in the amount of $348. This too appears to be undisputed.

Section 105's second subsection, 24–4.5–5–105(2), then establishes that, *subject to subsection (8),* the maximum part of a person's weekly disposable earnings that are subject to "garnishment" to enforce the payment of one or more judgments. This maximum is set as *the lesser of* twenty-five percent of the person's disposable earnings, or the amount by which the person's disposable earnings exceed thirty times the federal minimum hourly wage in effect. Here, twenty-five percent of Calisto's weekly disposable earnings is $360.17. The applicable federal minimum wage is $7.25 per hour. Thirty times $7.25 is $217.50. Thus, the amount by which Calisto's weekly disposable earnings exceeds this is $1,223.19. Obviously, $360.17 is less

---

**3.** Subsections (5) and (7) deal with the fees an employer may collect from an employee to compensate the employer for making the deductions, and subsection (6) states that the deduction of the garnishment collection fee under subsections (5) or (7) is not an assignment of wages.

than $1,223.19 and therefore, $360.17 is the maximum part of Calisto's weekly disposable earnings that are subject to garnishment to enforce Miller's judgment against Calisto.[4]

Section 105's third subsection, 24–4.5–5–105(3), defines the maximum part of an individual's weekly disposable earnings that are subject to "garnishment" or a "support withholding" that is in force as to "any order for the support of any individual." This includes "support withholdings" for child support as defined in Subsection 105(1)(c), as well as any other garnishment to enforce any order for the support of *any* individual.[5] Such withholdings are generally limited to fifty percent of the individual's weekly disposable earnings, if the individual is supporting his or her spouse or dependent child, or sixty percent of weekly disposable earnings if the person is not supporting his or her spouse or dependent child.[6]

The parties main disagreement focuses on the effect of Subsection 105's eighth subsection, 24–4.5–5–105(8), on the amount of weekly net disposable earnings available for garnishment when a child support withholding order is in place.[7] The first sentence of this subsection provides that a support withholding takes priority over a garnishment order irrespective of their dates of entry or activation. The second sentence of Subsection 105(8) then states that if a person is subject to both a support withholding order *and* a garnishment order, then the garnishment order shall be honored "only to the extent that the disposable earnings withheld under the support withholding order does not exceed the maximum amount subject to garnishment as computed under subsection (2)."

We think the language of Subsection 105(8) is clear and unambiguous. If a person is subject to both a child support withholding order and a garnishment order, as is Calisto, then the garnishment order shall be honored only to the extent that the earnings withheld under the child support withholding order do not exceed the amount subject to garnishment under Subsection 105(2). As set forth above, the maximum amount subject to garnishment under Subsection 105(2) in Calisto's case is twenty-five percent of his weekly disposable earnings, or $360.17. Thus, pursuant to the clear and unambiguous language of Subsection 105(8), Miller's garnishment order can only be honored to the extent that the earnings withheld under the child support order do not exceed $360.17. Calisto's current child support withholding order is $348. The extent to which $348 does not exceed $360.17 is $12.17. This is the amount that the trial court concluded

---

**4.** As discussed below, this is subject to Subsection 105(8).

**5.** Section 105(2) formerly provided that the twenty-five percent garnishment limit did not apply "to any order of any court for the support of any person." *Siskind v. Siskind*, 415 N.E.2d 771, 772 (Ind.Ct.App.1981). In *Siskind*. this court concluded the intent of this exception was to place no limit on "any person who was receiving a valid order for support or alimony to garnish only twenty-five percent of one's disposable earnings." *Id.* In 1982, perhaps in reaction to the *Siskind* holding, our General Assembly amended Section 105 by adding subsection (3), which limits

withholdings to satisfy orders for the support of *any* person. Pub.L.1982–151 § 1.

**6.** These limits are raised to fifty-five percent and sixty-five percent, respectively, "if and to the extent that such earnings are subject to garnishment or support withholding to enforce a support order with respect to a period which is prior to the twelve (12) week period which ends with the beginning of such workweek." I.C. § 24–4.5–5–105(3).

**7.** Subsection 105(8) was added by Pub.L. 1988–148 § 1.

that Waterford was properly withholding from Calisto's weekly wages.

Miller argues that Section 105's third subsection, 24–4.5–5–105(3), sets the maximum amount of weekly net earnings subject to a garnishment order and a child support withholding order in tandem at fifty to sixty-five percent. However, section 24–4.5–5–105(8) clearly and unambiguously refers back to the twenty-five percent maximum set forth in section 24–4.5–5–105(2), not to the much larger maximums of section 24–4.5–5–105(3). These latter, larger maximums would be applicable to a single, large support withholding, or even multiple support withholdings, such as might be in place for several, prior families and children. But when, as is the case here, there is both a support withholding order *and* a non-support garnishment order, section 24–4.5–5–105(8) applies, not the larger maximums of section 24–4.5–5–105(3).

While the language of section 24–4.5–5–105(8) renders Calisto effectively garnishment-proof so long as the current, or a subsequent and even larger, support withholding order remains in place, Calisto is not, as alleged by Miller, "judgment-proof" if other assets exist which are subject to attachment. And while the equities may favor Miller and judgment creditors in circumstances like hers, our General Assembly has considered and decided the public policy issues reflected in Section 105 and, as a court, we are bound by applicable statutes. The trial court did not err in its interpretation of Section 105.

## Conclusion

We conclude that the trial court properly construed Section 105 and properly determined that the amount of Calisto's weekly disposable earnings subject to garnishment is $12.17. Thus, the trial court did not err in finding that Waterford was not in contempt of the trial court's garnishment order, nor did the court err in denying Miller's request for attorney fees.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.