**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**STEVEN M. BUSH**
Millbranth and Bush
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE/
PERSONAL REPRESENTATIVE
1ST SOURCE BANK:

**ANDREW LUCAS**
**HUGO MARTZ**
Valparaiso, Indiana

FILED
Mar 26 2013, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE ESTATE OF JOSEPH JAMES REGALADO | ) | |
| | ) | |
| | ) | |
| VICTOR C. REGALADO, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1207-ES-322 |
| | ) | |
| THE ESTATE OF JOSEPH JAMES REGALADO, and PAULA HEFFELFINGER, | ) | |
| | ) | |
| Appellees-Respondents. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Jeffrey L. Thode, Special Judge
Cause No. 64D02-0410-ES-9659

**March 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Victor Regalado, an heir to the Estate of Joseph J. Regalado ("the Estate"), appeals the trial court's order granting a motion to correct error on the basis of newly discovered evidence filed by Paula Heffelfinger. Following remand from an earlier appeal, the trial court entered summary judgment in favor of Victor concluding that Paula, Joseph's purported half-sister, was not an heir to the Estate as there was no genuine issue of fact as to Paula's paternity. Essentially, the trial court determined that Paula's paternity could not be established in Joseph's father, Baltasar Regalado, because paternity had already been established in another man. Shortly thereafter, Paula filed a motion to correct error based upon newly discovered DNA evidence regarding paternity. Following a hearing, the trial court granted Paula's motion to correct error and set aside its previous order granting summary judgment in favor of Victor.

On appeal, Victor contends that the trial court abused its discretion when it determined that the DNA evidence constituted newly discovered evidence pursuant to Indiana Trial Rule 59(A)(1). Victor also contends that, pursuant to the doctrines of collateral estoppel and law of the case, Paula should be precluded from further litigating the issue of her heirship. Finding no abuse of discretion and further finding that neither collateral estoppel nor law of the case applies, we affirm and remand for further proceedings.

**Facts and Procedural History**

This Court has outlined the relevant factual background as follows:

> In 1991, Joseph suffered serious and permanent brain damage as the result of an altercation with officers of the Chicago Police Department. Joseph

2

was thereafter adjudicated a disabled person, and his father, Baltasar Regalado, served as his guardian. On Joseph's behalf, Baltasar brought a federal lawsuit against the City of Chicago for the actions of its police officers, and in December 2000, the claim was settled for fifteen million dollars.

Baltasar and Joseph later moved to Porter County, Indiana, where Joseph died intestate in October 2004. At the time of his death, Joseph owned no real property but had eight to nine million dollars of personal property located in Indiana. Because Joseph left no surviving spouse or issue, according to Indiana Code section 29-1-2-1(d)(3) his estate is to be distributed to his surviving parents, brothers, sisters, and issue of his deceased brothers and sisters. A few days after Joseph's death, Baltasar filed a Petition for the Appointment of Administrator and for Supervised Administration, which listed himself as well as Joseph's brothers Chris, Martin, Victor, David, and Tony as Joseph's known heirs. The petition also listed among Joseph's known heirs Paula as his half-sister.

Paula was born in October 1967 to Carmen Nadine Durea, who is not Joseph's mother. Carmen and Baltasar married in Arizona in April 2003, when Paula was thirty-five years old. During the marriage, Carmen lived in Arizona and Baltasar lived in Indiana. Baltasar instituted annulment proceedings in Indiana in 2005. In the proceedings, Baltasar and Carmen signed an Agreed Order of Annulment, the preface of which states, "The subject matter of this Agreement is the settlement of the respective rights of Husband and Wife to all property, both real and personal, now in their name and/or possession, and any property which may come into their possession as a result of inheritance." Within the Agreed Order of Annulment, Baltasar acknowledged Paula as his biological daughter: "Both parties readily acknowledge that Paula Heffelfinger is their natural daughter, fathered by the Petitioner and born to the Respondent on October 13, 1967." The trial court entered an Order of Annulment in November 2005.

*Regalado v. Estate of Regalado*, 933 N.E.2d 512, 516-17 (Ind. Ct. App. 2010) (citations and footnotes omitted).

In October 2008, one of Joseph's brothers, Victor, filed a petition to determine heirship, which alleged that Paula was not Joseph's half-sister and requested a hearing on the matter. Paula filed a motion for summary judgment and designation of evidence arguing that

she is Joseph's sibling as a matter of law. Victor responded contending that Paula failed to conclusively establish that Baltasar is her biological father. Following a hearing, the trial court entered an order finding Paula to be Joseph's sibling and thus granting her motion for summary judgment. Victor filed a motion to correct error, which was denied by the trial court. Thereafter, Victor filed an appeal with this Court.

On appeal, we were confronted with an issue of first impression as to whether a child must show that she is born out of wedlock before Indiana Code Section 29-1-2-7, which governs the intestate succession of children born out of wedlock, can be applied.[1] *Id*. at 521-22. Concluding that the plain language of that statute requires a child to indeed show that she is a child born out of wedlock, we determined that Paula had not designated sufficient

---

[1] Indiana Code Section 29-1-2-7 provides in relevant part:

(b) For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if one (1) of the following requirements is met:

(1) The paternity of a child who was at least twenty (20) years of age when the father died has been established by law in a cause of action that is filed during the father's lifetime.

(2) The paternity of a child who was less than twenty (20) years of age when the father died has been established by law in a cause of action that is filed:

(A) during the father's lifetime; or

(B) within five (5) months after the father's death.

(3) The paternity of a child born after the father died has been established by law in a cause of action that is filed within eleven (11) months after the father's death.

(4) The putative father marries the mother of the child and acknowledges the child to be his own.

(5) The putative father executes a paternity affidavit as set forth in IC 16-37-2-2.1.

4

evidence to show that there is no genuine issue of material fact that she is a child born out of wedlock. *Id.* at 523. We further concluded that a genuine issue of material fact remained as to whether Baltasar is Paula's biological father. Therefore, we concluded that the trial court erred in granting summary judgment in Paula's favor. Accordingly, we reversed and remanded.

Upon remand, Paula filed a motion for Baltasar to submit to a paternity test. On July, 6, 2011, the trial court denied Paula's motion, in part, because it determined that Paula's paternity had long been established in a man named William Piffer, the father listed on Paula's birth certificate and confirmed in a 1971 Illinois divorce decree between her mother and Piffer. Paula filed a motion to correct error, which the trial court denied. On July 29, 2011, Victor filed a motion for summary judgment against Paula's heirship arguing that Paula cannot establish paternity in Baltasar and that paternity had already been established in Piffer. Paula filed a response to the motion as well as an amended motion to correct error accompanied by an affidavit of Piffer in which Piffer averred that he did not believe that he is Paula's biological father and that he was willing to submit to a DNA test to prove that he is not her biological father. Appellant's App. at 116. A hearing was held on both motions on January 30, 2012. On March 28, 2012, the trial court entered an order denying Paula's motion to correct error and granting Victor's motion for summary judgment. Specifically, the trial court concluded that there was no genuine issue of material fact as to Paula's paternity.

On April 26, 2012, Paula filed a motion to correct error based upon newly discovered material DNA evidence. Paula attached DNA test results indicating that there is a 0% possibility of Piffer's paternity regarding Paula.[2] Following a hearing, on June 20, 2012, the trial court entered an order granting Paula's motion to correct error and setting aside its previous order granting summary judgment in favor of Victor. This appeal followed.

**Discussion and Decision**

We begin by noting that Paula has not filed an appellee's brief.[3] When a party fails to submit a brief, we will not undertake the burden of developing arguments for that party. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. *In re Paternity of B.N.C.*, 822 N.E.2d 616, 618-19 (Ind. Ct. App. 2005). Prima facie error is error at first sight, on first appearance, or on the face of it. *Id.* at 619. An appellee's failure to file a brief, however, does not relieve us of our obligation to correctly apply the law to facts in the record in order to determine whether reversal is required. *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 725 (Ind. Ct. App. 2009).

---

[2] Although submitted shortly after the motion to correct error in support of an alternative motion for relief from judgment, Paula also presented a May 4, 2012, order obtained from an Illinois circuit court declaring that Piffer is not Paula's biological father thereby vacating the Illinois court's previous declaration of Piffer's paternity contained in the 1971 Illinois dissolution decree between Piffer and Paula's mother. Appellant's App. at 151.

[3] The only appellee's brief in this case was filed by the Estate's personal representative, 1st Source Bank. However, as the personal representative, 1st Source Bank maintains that it is a disinterested neutral party and that it takes no position regarding the merits of this appeal. Appellee's Br. at 2.

6

Victor appeals from the trial court's order granting Paula's motion to correct error. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it or the court has misinterpreted the law. *Scales v. Scales*, 891 N.E.2d 1116, 1118 (Ind. Ct. App. 2008). The trial court's decision comes to us cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. *Page v. Page*, 849 N.E.2d 769, 771 (Ind. Ct. App. 2006). In making our determination, we may neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Instead, we look to the record to determine if the trial court abused its judicial discretion, a flagrant injustice has been done to the appellant, or the appellant has made a very strong case for relief. *Id.*

## *I. Newly Discovered Evidence*

Paula's motion to correct error was based upon newly discovered evidence. Specifically, to support her argument that a genuine issue of material fact remains as to her paternity, Paula produced DNA test results indicating that Piffer, her mother's husband at the time of her birth, is not her biological father. Although submitted prior to the motion to correct error but incorporated by reference, Paula submitted Piffer's affidavit in which he stated that he did not believe he was Paula's biological father and that he was willing to take a DNA test. Appellant's App. at 116.

Indiana Trial Rule 59(A)(1) provides that a motion to correct error is mandatory when a party seeks to address newly discovered material evidence. To prevail on a motion to

correct error based upon newly discovered evidence, Paula needed to demonstrate that the evidence could not have been discovered and produced at the summary judgment proceedings with reasonable diligence; that the evidence is material, relevant, and not merely cumulative or impeaching; that the evidence is not incompetent; that she exercised due diligence to discover the evidence in time for the final hearing; that the evidence is worthy of credit; and that the evidence raises a strong presumption that a different result would have otherwise been reached. *Regalado*, 933 N.E.2d at 518. "When a motion to correct error is based upon evidence outside the record, the motion shall be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion." Ind. Trial Rule 59(H)(1).

Victor asserts that the trial court abused its discretion when it granted Paula's motion to correct error because Paula failed to show that: (1) she exercised reasonable diligence to obtain the DNA evidence prior to the summary judgment proceedings, (2) the DNA evidence is material and relevant, and (3) the evidence raises a strong presumption that a different result would have otherwise been reached. We disagree.

During the hearing on the motion to correct error, Paula's counsel argued that Paula exercised reasonable diligence in obtaining the DNA test results within thirty days of the trial court's entry of summary judgment in Victor's favor, especially given the fact that the trial court found the convoluted issue involved on summary judgment to be an issue of first impression both in Indiana and also in Illinois, the state in which Paula's paternity was originally deemed established. As noted by the trial court in its summary judgment order,

8

> [t]he issue presented in this case, namely whether an adult, emancipated child is permitted to challenge her paternity when another man has been named on her birth certificate and in a judicial proceeding within the context of estate contest, is one of first impression. The question of her paternity cannot be neatly classified under either the family law or probate statutes of this jurisdiction.

Appellant's App. at 120. Indeed, as further noted by the court, "there is neither case precedent speaking directly to the issue in either Illinois or in Indiana, nor statute binding on the Court …." *Id*. at 122.

During the hearing, Paula's counsel also asserted that Paula had already submitted Piffer's affidavit regarding his belief that he was not her biological father and that, in essence, she did not know whether an actual DNA test disestablishing Piffer's paternity would be necessary or material evidence in the summary judgment proceedings regarding her heirship. Counsel argued that because Piffer is a third party, and not a party to the current action, it was more difficult to obtain the DNA test results and that Paula obtained the results when feasible. Although we agree with Victor that Paula should have submitted an affidavit specifically averring the circumstances surrounding her reasonable diligence in obtaining the DNA evidence, her failure to do so is not dispositive. The trial court was able to review the Piffer affidavit and the explanation of reasonable diligence presented by counsel at the hearing on the motion to correct error. The trial court found counsel's explanations of due diligence credible and Paula's actions to be reasonably diligent. We will not second-guess that determination.

Victor next argues that Paula failed to show that the DNA evidence is material or relevant to the summary judgment proceedings. He asserts that all Paula has done is prove

that Piffer is not her biological father, but the evidence does not prove that Baltasar is her father. However, our review of the record reveals that during these proceedings, Victor has relied heavily on Piffer's paternity of Paula as evidence of Baltasar's non-paternity of Paula. Indeed, in the trial court's July 2011 written order denying Paula's request for Baltasar to submit to a paternity test, the trial court relied heavily on Piffer's established paternity of Paula as its reason for denying Paula's request. Then, in its entry of summary judgment in favor of Victor, the trial court again relied on Piffer's paternity as grounds for summary judgment. Thus, the DNA evidence is both material and relevant.

Finally, Victor argues that Paula has not shown that the DNA evidence raises a strong presumption that a different result would have otherwise been reached. As stated above, our review of the record indicates that the trial court has relied heavily on Piffer's paternity regarding Paula as evidence tending to prove Baltasar's non-paternity. This new evidence regarding Piffer's non-paternity coupled with the ample evidence supporting Baltasar's paternity may well have produced a different result than that reached by the trial court when it granted summary judgment in favor of Victor.

Under the circumstances, we cannot say that the trial court's decision to grant Paula's motion to correct error based upon newly discovered evidence is clearly against the logic and effect of the facts and circumstances before the court. Essentially, Victor asks that we reweigh the evidence in his favor, a task not within our prerogative on appeal. Victor has not met his burden of proving that the trial court abused its discretion in granting Paula's motion to correct error.

## *II. Collateral Estoppel and Law of the Case*

Victor maintains that, pursuant to the doctrines of collateral estoppel and law of the case, Paula should be precluded from further litigating the issue of her heirship before the trial court or this Court because the issue was before this Court and conclusively decided by our opinion in *Regalado*. Collateral estoppel bars subsequent litigation of a fact or issue which was adjudicated in previous litigation if the same fact or issue is presented in a subsequent lawsuit. *Nolan v. City of Indianapolis*, 933 N.E.2d 894, 897 (Ind. Ct. App. 2010), *trans. denied* (2011). The former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Id.* However, the former adjudication will be conclusive only as to those issues which were actually litigated and determined therein. *Id.* Similarly, the law-of-the-case doctrine is a discretionary rule that expresses the practice of courts to refuse to reopen what has previously been decided. *Miller v. Owens*, 953 N.E.2d 1079, 1082 (Ind. Ct. App. 2011), *trans. denied*.

Victor argues that, in *Regalado*, we determined that Paula is not a child born out of wedlock and that Baltasar is not her biological father and, therefore, the facts crucial to the issue of her heirship have already been litigated and determined. Contrary to Victor's argument, no such conclusions were made and no such facts were found. In *Regalado*, this Court neither determined Paula's status as a child born out of wedlock nor determined Paula's paternity. We merely determined that the designated evidence submitted by Paula in support of summary judgment was insufficient to determine those issues as a matter of law and that genuine issues of material fact remained as to her status as a child born out of

11

wedlock and as to her paternity. *See Regalado*, 933 N.E.2d at 523-26. Therefore, the doctrines of collateral estoppel and law of the case do not apply. Paula's heirship remains an issue that may be litigated by the parties upon remand.

In sum, Victor has failed to show that the trial court abused its discretion in granting Paula's motion to correct error based upon newly discovered evidence. The trial court's order granting Paula's motion to correct error and setting aside the previous entry of summary judgment in Victor's favor is affirmed. We remand to the trial court for further proceedings consistent with this opinion.

Affirmed and remanded.

KIRSCH, J., and MATHIAS, J., concur.